IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Ohio Fresh Eggs, LLC, et al.,

        Plaintiffs,

    v.

Smith & Kramer, P.C., et al.,

        Defendants.

Case No: 2:20-cv-5267

Judge Graham

Magistrate Judge Jolson

<u>Opinion and Order</u>

    Plaintiffs Ohio Fresh Eggs, LLC and Ohio Investments Co., LLC bring this legal malpractice action against their former legal counsel located in Iowa – the law firm of Smith & Kramer, P.C. and attorneys William Sidney Smith and Jan Mohrfield Kramer. Defendants allegedly failed to ensure that several lease agreements, into which Ohio Fresh entered as lessor in 2011, contained all of the necessary terms. Because the agreements lacked provisions requiring the lessee to comply with certain environmental emissions standards, plaintiff alleges that it faces potential indemnification obligations arising from the costs and penalties that the lessee has or will incur in cooperating with the United States Environmental Protection Agency to bring itself into compliance.

    This matter is before the court on defendants' motion to dismiss. Defendants argue that the malpractice claim is time-barred under the applicable one-year statute of limitations. For the reasons stated below, the motion to dismiss is denied.

**I.    Background**

    In the late 1990s and early 2000s, non-party Buckeye Egg Farm operated egg production facilities in Croton, Marseilles and Mt. Victory, Ohio. The facilities were the subject of an EPA action brought in 2003 in the United States District Court for the Northern District of Ohio. *See United States of America v. Buckeye Egg Farm, L.P., et al.*, No. 3:03-cv-7681 (N.D. Ohio).

1

The EPA action against Buckeye ended in a Consent Decree in 2004.[1] *See* Doc. 9-5. Among the many obligations imposed, Buckeye agreed to pay a substantial civil penalty and perform work and make upgrades to the facilities to bring them into compliance with specific emissions standards.

At the time the Consent Decree was issued, it was known that Ohio Fresh was in the process of purchasing all three of the Buckeye facilities. The Consent Decree stated that Buckeye was selling the facilities to Ohio Fresh and provided that the transactions would be "conditioned upon Ohio Fresh's agreement to undertake the obligations required by this Decree . . . and to impose these same obligations upon any subsequent transferees of these properties." *Id.* at PAGEID 121. The Decree further provided that the United States would be a third-party beneficiary to the purchase agreements between Buckeye and Ohio Fresh and that it could enforce the requirement that Ohio Fresh and subsequent transferees of the properties would comply with the obligations required by the Decree.

The Consent Decree also provided as follows: "Any purchase and sale agreement or lease or other instrument of conveyance for the Buckeye Locations shall contain a notice that the Buckeye Location at issue is the subject of this Consent Decree . . . ." *Id.* at PAGEID 122.

According to the complaint, defendants served as legal counsel for Ohio Fresh during the process of Ohio Fresh purchasing the egg facilities. Buckeye and Ohio Fresh entered into two separate Purchase Agreements. *See* Docs. 9-3, 9-4. Both Agreements provided, in a section entitled "Environmental Liabilities," that the "Purchaser will assume all operational and capital improvement commitments under the consent decree" issued in the EPA suit. *See* Doc. 9-3 at PAGEID 68; Doc. 9-4 at PAGEID 99.

Buckeye and Ohio Fresh also executed a "United States as Third Party Beneficiary Agreement." Doc. 9-7. That document acknowledged that the transfer of ownership of the egg facilities was "conditioned upon Ohio Fresh's agreement to undertake the obligations required by [the Consent] Decree . . . and to impose these same obligations upon any subsequent transferees." *Id.* at PAGEID 192. It further provided that the "United States is a third-party beneficiary of this Agreement under which Buckeye assigns its responsibilities under the Consent Decree to Ohio Fresh and Ohio Fresh accepts those obligations." *Id.* at PAGEID 193. "Buckeye and Ohio Fresh agree to

---

[1] In the complaint, Ohio Fresh alleges the existence of several documents, including purchase agreements, lease agreements and the Consent Decree, but does not attach them to the complaint. Defendants have attached these documents to their motion to dismiss. Ohio Fresh does not dispute their authenticity nor deny that they are central to the malpractice claim. The court will include the documents in its consideration of the motion to dismiss. *See Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997).

impose these same obligations upon any subsequent transferees of these properties, including provisions for the United States to be a third-party beneficiary of the assumption of obligations by the subsequent transferee." *Id.*

The complaint alleges that Ohio Fresh decided to "exit the egg business" in 2011. Doc. 1 at ¶ 13. Ohio Fresh retained defendants to negotiate a lease of the facilities to Trillium Holdings LLC. Ohio Fresh and Trillium executed several lease agreements, each entitled "Master Agreement," in 2011. *See* Docs. 9-8, 9-9. According to the complaint, defendants drafted the Master Agreements.

The complaint further alleges that the Master Agreements failed to include all of the provisions they were supposed to have contained. The Master Agreements allegedly did not provide Trillium with notice of the Consent Decree, nor did the Agreements impose the Consent Decree's obligations on Trillium.

On July 10, 2018, Trillium notified Ohio Fresh that the EPA was considering taking action against Trillium for failing to comply with the Consent Decree.[2] Trillium stated that it would assert a claim for indemnification under the Master Agreements against Ohio Fresh. Trillium contended that it was not given notice of the Consent Decree by Ohio Fresh and that the Master Agreements did not require Trillium to comply with the obligations of the Consent Decree.

Ohio Fresh alleges that defendants' failure to include the required provisions concerning the Consent Decree in the Master Agreements constitutes a breach of defendants' duty to exercise the knowledge, skill and ability ordinarily possessed and exercised in a reasonably diligent manner by members of the legal profession similarly situated. Ohio Fresh further alleges that defendants' breach of duty has caused it damages that include the following costs arising from its indemnification obligations to Trillium: ongoing attorney fees, costs and expert fees in defending against the position of the EPA; costs in installing, reinstalling and repairing emission control devices and implementing emission control plans; and possible stipulated penalties under the Consent Decree.

Ohio Fresh originally filed this suit on July 9, 2019. It voluntarily dismissed the suit without prejudice on October 8, 2019. Ohio Fresh refiled the suit on October 7, 2020.

The complaint asserts causes of action for negligence, breach of fiduciary duty and breach of contract. As will be discussed below, the court will treat each of these claims as one for legal

---

[2] It is unclear from the complaint and briefs whether the EPA has instituted any formal proceedings against Trillium or Ohio Fresh.

malpractice. Defendants have filed a motion to dismiss in which they argue that the malpractice claim is time-barred and that, alternatively, the complaint fails to state a claim for malpractice.

## II.     Standard of Review

Federal Rule of Civil Procedure 8(a) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When considering a motion under Rule 12(b)(6) to dismiss a pleading for failure to state a claim, a court must determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court should construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the complaint as true. *Iqbal*, 556 U.S. at 679; *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *Twombly*, 550 U.S. at 555-56.

Despite this liberal pleading standard, the "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 555, 557 ("labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do," nor will "naked assertion[s]" devoid of "further factual enhancements"). The plaintiff must provide the grounds of his entitlement to relief "rather than a blanket assertion of entitlement to relief." *Twombly*, 550 U.S. at 556 n.3. Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679.

When the complaint does contain well-pleaded factual allegations, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Though "[s]pecific facts are not necessary," *Erickson*, 551 U.S. at 93, and though Rule 8 "does not impose a probability requirement at the pleading stage," *Twombly*, 550 U.S. at 556, the factual allegations must be enough to raise the claimed right to relief above the speculative level and to create a reasonable expectation that discovery will reveal evidence to support the claim. *Iqbal*, 556 U.S. at 678-79; *Twombly*, 550 U.S. at 555-56. This inquiry as to plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the

4

complaint has alleged – but it has not 'show[n]'– 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

### III. Discussion
#### A. The Claims are Subsumed by a Claim for Legal Malpractice

Though the complaint asserts three separate cause of action, each one is based on the manner in which defendants represented Ohio Fresh – namely, defendants' alleged failure to negotiate and draft Master Agreements which contained all of the terms that were required under the Consent Decree, Purchase Agreements and the United States as Third Party Beneficiary Agreement.

Under Ohio law,[3] an "action against one's attorney for damages resulting from the manner in which the attorney represented the client constitutes an action for malpractice within the meaning of R.C. 2305.11 [the statute of limitations], regardless of whether predicated upon contract or tort or whether for indemnification or for direct damages." *Muir v. Hadler Real Estate Mgmt. Co.*, 4 Ohio App.3d 89, 90, 446 N.E.2d 820, 822 (Ohio Ct. App. 1982). A claim for breach of fiduciary duty or breach of contract against one's attorney is independently viable only "if the conduct underlying those claims is distinct from the conduct underlying the malpractice claim." *Waite, Schneider, Bayless & Chesley Co., L.P.A. v. Davis*, 5 F.Supp.3d 922, 926 (S.D. Ohio 2014).

If a claim for breach of fiduciary duty or breach of contract is "premised upon defendant's alleged acts or omissions committed in its representation of plaintiff," then those claims are subsumed by a claim for malpractice. *Id.* at 927 (internal quotation marks omitted); *see also Zell v. Klingelhafer*, 751 Fed. App'x 641, 645 n.1 (6th Cir. 2018); *Windsor-Laurelwood Ctr. Behav. Med. v. Waller Lansden Dortch & Davis*, No. 1:13 CV 00098, 2015 WL 1859005, at *9 (N.D. Ohio Apr. 22, 2015) ("[W]here a breach of contract claim is based on the manner in which attorneys provided advice and counsel, the claim alleges attorney malpractice . . . ."); *Omega Riggers & Erectors, Inc. v. Koverman*, 2016-Ohio-2961, ¶ 32, 65 N.E.3d 210, 223 (Ohio Ct. App. 2016) ("Ohio does not recognize an independent claim for breach of fiduciary duty against an attorney acting in his capacity as attorney and counselor.").

Here, each claim is expressly premised on defendants' actions and omissions committed in the course of their legal representation of Ohio Fresh. Count One for negligence alleges that defendants'

---

[3] The parties agree that Ohio law applies in this suit concerning representation provided to an Ohio client negotiating to purchase facilities in Ohio. *See Est. of Sample through Cornish v. Xenos Christian Fellowship, Inc.*, 2019-Ohio-5439, ¶ 17, 139 N.E.3d 978, 984 (Ohio Ct. App. 2019) (Ohio follows the choice-of-law rules of the Restatement of the Law 2d, Conflict of Laws (1971), which generally applies the law of the state that has the most significant relationship with the parties and dispute).

failure to properly draft the Master Agreements breached "their duty of reasonable care for their clients and fell below the level of the standard of skill and care required by attorneys similarly situated, and proximately caused damages to Plaintiffs." Doc. 1 at ¶ 30. Count Two for breach of fiduciary duty alleges that "[a]n attorney-client privileged relationship existed between Plaintiffs and Defendants" and that plaintiffs suffered damage because they "relied upon Defendants' representations, counsel, and advice, in good faith, now to their detriment." *Id* at ¶¶ 32, 33. Count Three for breach of contract alleges that "Defendants' representation of Plaintiffs resulted in a binding contract and contractual obligations" whereby Defendants owed a duty "to exercise an appropriate level and standard of skill and care required by attorneys in their profession similarly situated." *Id.* at ¶ 36.

The court will thus treat Counts One, Two and Three of the complaint as subsumed by a claim for legal malpractice and as subject to the statute of limitations applicable to a malpractice claim. *See Purushealth, L.L.C. v. Day Ketterer, L.L.P.*, 2019-Ohio-2002, ¶ 39, 136 N.E.3d 923, 930 (Ohio Ct. App. 2019) ("[W]e determine the applicable statute of limitations from the gist of the complaint and not from the label that a party may assign to a set of facts. . . . When the gist of the complaint sounds in malpractice, the other duplicative claims, even those labeled as fraud and breach of contract, are subsumed within the legal-malpractice claim.") (internal quotation marks omitted).

**B.     Statute of Limitations**

The statute of limitations for malpractice claims in Ohio is one year after the cause of action accrues. O.R.C. § 2305.11(A). "[A]n action for legal malpractice accrues and the statute of limitations begins to run when there is a cognizable event whereby the client discovers or should have discovered that his injury was related to his attorney's act or non-act and the client is put on notice of a need to pursue his possible remedies against the attorney or when the attorney-client relationship for that particular transaction or undertaking terminates, whichever occurs later." *Zimmie v. Calfee, Halter & Griswold*, 43 Ohio St.3d 54, 58, 538 N.E.2d 398, 401 (Ohio 1989). A malpractice claim thus accrues at the later of two occurrences: a cognizable event (the discovery rule) or the end of the attorney-client relationship for the transaction. *Smith v. Conley*, 109 Ohio St.3d 141, 142, 846 N.E.2d 509, 511–12 (Ohio 2006).

It is undisputed that the attorney-client relationship ended no later than July 2014. According to the complaint, when Ohio Fresh and Trillium negotiated a new Master Agreement in 2014, Ohio Fresh was represented by new legal counsel and not by defendants. *See* Doc. 1 at ¶ 24. The attorney-client relationship thus terminated at least five years before Ohio Fresh first filed suit in July 2019. *See Asente v. Gargano*, 2004-Ohio-5069, ¶ 13, 2004 WL 2803417, at *3 (Ohio Ct. App. Sept. 23, 2004)

6

(holding that "[c]onduct indicating the end of the attorney-client relationship includes the client retaining another attorney" regarding the "the same subject matter for which the client had retained previous counsel").

The analysis therefore turns to the discovery rule. "A 'cognizable event' is an event that places a reasonable person on notice that a 'questionable legal practice may have occurred,'" which may necessitate legal action against the attorney. *Werts v. Penn*, 164 Ohio App.3d 505, 510, 842 N.E.2d 1102, 1106 (Ohio Ct. App. 2005). Put another way, a cognizable event occurs when a reasonable client would have perceived "mistakes in lawyering." *Omlin v. Kaufman & Cumberland Co., L.P.A.*, 8 Fed. App'x 477, 479 (6th Cir. 2001). It is an even which "puts the plaintiff on notice to investigate the facts and circumstances relevant to his or her claim in order to pursue remedies." *Tom Raper Homes, Inc. v. Mowery & Youell, Ltd.*, No. 2:07-cv-123, 2008 WL 4221995, at *2 (S.D. Ohio Sept. 15, 2008).

The focus of the inquiry should be on "what the plaintiff knew or should have known." *Id.*, 2008 WL 4221995, at *3 (citing *McDade v. Spencer*, 75 Ohio App.3d 639, 643, 600 N.E.2d 371, 374 (Ohio Ct. App. 1991)). The inquiry into what plaintiff should have known is conducted with reference to "an objective reasonable person standard of review, and not a subjective standard." *Tom Raper Homes*, 2008 WL 4221995, at *3 (citing cases). "This test provides that it is enough that some noteworthy event, the cognizable event, has occurred which does or should alert a reasonable person that improper legal work has taken place." *Sesto v. Perduk*, 2008-Ohio-664, ¶ 9, 2008 WL 441627, at *2 (Ohio Ct. App. Feb. 20, 2008) (internal quotation marks omitted).

Ohio Fresh argues that the cognizable event was when it received notice from Trillium in July 2018 that the EPA was considering taking action against Trillium for failing to comply with the Consent Decree and that Trillium potentially would be asserting a claim for indemnification against Ohio Fresh. According to Ohio Fresh, it did not know or have reason to know up until that point that the Master Agreements lacked the necessary provisions regarding the Consent Decree.

Defendants argue that the cognizable event was the execution of the Master Agreements in 2011. According to defendants, Ohio Fresh is deemed to have constructive notice of the contracts it signed. Defendants contend that Ohio Fresh read and signed the Agreements and should have discovered that they lacked the necessary provisions.

The court finds at the motion to dismiss stage that the complaint contains allegations from which a plausible inference can be drawn that a reasonable client would not have discovered defendants' alleged mistakes until Trillium provided notice to Ohio Fresh of the EPA's concerns. In

7

particular, the complaint alleges that Ohio Fresh relied on the advice and counsel of defendants that Ohio Fresh should execute the Master Agreements. The complaint further alleges that defendants failed to advise Ohio Fresh that the language which already appeared in the Master Agreements – to the effect that the environmental conditions of the facilities complied with all applicable environmental regulations and consent decrees – did not satisfy the requirements of the Consent Decree and Purchase Agreements. *See* Doc. 1 at ¶ 21; Doc. 9-8 at PAGEID 211.

It is generally true that "[o]ne who signs a contract is presumed to know its contents, and . . . if he has had an opportunity to read the contract which he signs he is bound by its provisions." *Stout v. J.D. Byrider*, 228 F.3d 709, 715 (6th Cir. 2000) (internal quotation marks omitted). This rule provides certainty and clarity for parties in enforcing the contracts they have entered into with one another.

But the question here is not whether Ohio Fresh is bound to the Master Agreements vis-à-vis Trillium. It is whether the complaint supports a plausible inference that Ohio Fresh, as the client, reasonably relied on the advice of counsel in understanding what the Master Agreements meant and in deciding to sign the Agreements. The court finds that complaint supports such an inference. *See Gorsha v. Clark*, No. 2:18-cv-508, 2019 WL 1071576, at *5 (S.D. Ohio Mar. 7, 2019) (holding at the Rule 12(c) stage that plaintiffs had sufficiently alleged that they relied on their attorney to correctly prepare a deed and had no reason to know that it omitted important terms); *see also F.D.I.C. v. Alexander*, 78 F.3d 1103, 1109 (6th Cir. 1996) (endorsing the general proposition that lay people are entitled to rely on the opinions of their lawyers).

Defendants stress that Ohio Fresh was in a different position than a normal client. Ohio Fresh was a party to the Purchase Agreements and the United States as Third Party Beneficiary Agreement, and those documents repeatedly stated the requirement that subsequent transferees be made to comply with the Consent Decree. Defendants contend that Ohio Fresh must be charged with constructive notice of that requirement and that Ohio Fresh cannot be heard to now argue that it should be excused from failing to notice that the Master Agreements omitted necessary terms.

Defendants' argument is better suited for a motion for summary judgment. Defendants might ultimately be successful in demonstrating from the evidence that Ohio Fresh should have perceived at the time it read the Master Agreements that they lacked the necessary provisions. But the analysis of when a client should have known that a questionable legal practice may have occurred is a factual one. *See Charash v. Oberlin College*, 14 F.3d 291, 300 (6th Cir. 1994) (constructive notice is "generally . . . an issue of fact"); *Zimmie*, 43 Ohio St.3d at 58–59, 538 N.E.2d at 402 ("[A] factual inquiry into the circumstances of a case establishes when the cause of action accrues and the period of limitations

commences in a malpractice action."); *Conley*, 109 Ohio St.3d at 142, 846 N.E.2d at 511–12 (the discovery rule requires "factual determinations"); *Woodrow v. Heintschel*, 194 Ohio App.3d 391, 401–02, 956 N.E.2d 855, 864 (Ohio Ct. App. 2011) ("The test [for a cognizable event] necessarily takes into account all the relevant facts and circumstances.").

At the motion to dismiss stage, the complaint sufficiently alleges that Ohio Fresh reasonably relied on defendants' advice in believing that the Master Agreements contained the terms that it should have. *See Hedges v. Bittinger*, No. 1:17CV720, 2017 WL 4545685, at *3 (N.D. Ohio Oct. 12, 2017) ("Because the cognizable event is a disputed issue of fact, judgment at this stage of the proceedings [on a Rule 12(c) motion] is improper.").

### C. The Complaint Sufficiently Alleges the Elements of a Malpractice Claims

Defendants next argue that the complaint fails to state a claim for malpractice. The elements of a legal malpractice claim are: (1) an attorney-client relationship giving rise to a duty, (2) breach of the duty, and (3) a causal connection between the conduct complained of and the resulting damages. *See Vahila v. Hall*, 77 Ohio St.3d 421, 427, 674 N.E.2d 1164, 1169 (Ohio 1997). "An attorney owes to a client the duty to exercise the knowledge, skill, and ability ordinarily possessed and exercised by members of the legal profession similarly situated, and to discharge that duty in a reasonably diligent, careful, and prudent manner." *Dottore v. Vorys, Sater, Seymour & Pease, L.L.P.*, 2014-Ohio-25, ¶ 34, 2014 WL 72538, at *6 (Ohio Ct. App. Jan. 9, 2014).

Defendants contend that in preparing the Master Agreements they did not owe Ohio Fresh a duty to inform it of the Consent Decree's requirements for two reasons: (1) there are no allegations that defendants were aware of the Consent Decree and (2) Ohio Fresh was already aware of the Consent Decree.

Defendants' argument is without merit. The complaint alleges that defendants represented Ohio Fresh in 2003 and 2004 when Ohio Fresh purchased the egg facilities from Buckeye and the Consent Decree was issued. In the course of that legal representation, defendants allegedly gained direct knowledge of the Consent Decree. *See* Doc. 1 at ¶ 11 ("In 2004, Defendants knew that when [Ohio Fresh] acquired the facilities, [Ohio Fresh] assumed the responsibilities under the Federal Consent Decree . . . ."); *id.* at ¶ 19 (alleging that defendants "knew about the Federal Consent Decree and its ongoing requirements").

Moreover, the scope of the attorney-client relationship alleged in the complaint did not merely entail defendants informing Ohio Fresh of the Consent Decree. Even if Ohio Fresh already knew of the Consent Decree's requirements, the complaint alleges that Ohio Fresh retained defendants to

negotiate and draft Master Agreements which complied with the Consent Decree and contained all necessary terms. *See id.* at ¶¶ 15, 19. The complaint alleges that defendants failed to do so and thereby breached their duty of care to Ohio Fresh. In sum, the complaint sufficiently states a claim for legal malpractice.

## IV. Conclusion

Accordingly, defendants' motion to dismiss (doc. 9) is DENIED.

                                                      s/ James L. Graham
                                                      JAMES L. GRAHAM
DATE: July 21, 2021                             United States District Judge