IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**OHIO FRESH EGGS, LLC, et al.,**

    **Plaintiffs,**

    v.                                    Civil Action 2:20-cv-5267
                                         Judge James L. Graham
                                         Magistrate Judge Jolson

**SMITH & KRAMER, PC, et al.,**

    **Defendants.**

## OPINION AND ORDER

This matter is before the Court on Defendants' Motion to Compel (Doc. 52). For the reasons that follow, the Motion is **GRANTED in part and DENIED in part**. The subpoena is modified so as not to require the production of communications involving the 2018 investigation by the EPA. Plaintiffs are **ORDERED** to review the documents collected by KMK and produce any non-privileged documents, as well as a privilege log for any withheld documents, to Defendants within **thirty (30) days** of the date of this Opinion and Order. Plaintiffs' requests for sanctions and additional modification of the subpoena are **DENIED**. Additionally, the parties identified several other discovery matters in a recent status report and, with regard to one dispute, requested leave to file additional discovery motions. (Doc. 65). Those requests are **DENIED without prejudice**.

**I.**    **BACKGROUND**

Previously, the District Judge thoroughly described the background giving rise to this action. (Doc. 24 at 1–4). Still, the Undersigned briefly notes Plaintiffs' key allegations. Plaintiffs Ohio Fresh Eggs, LLC and Ohio Investments Co., LLC purchased Ohio egg farm facilities in 2004. (Doc. 1, ¶ 8). The facilities were not purchased unencumbered—they were acquired subject to a

Consent Decree entered by the prior owner with the Environmental Protection Agency ("EPA") and Department of Justice ("DOJ"). (*Id.*, ¶ 9). The Consent Decree required the development and implementation of emission control plans (*id.*) and its obligations were to be imposed on any subsequent transferees (Doc. 9-5 at 4). Throughout the 2004 purchase, Defendants Smith & Kramer, P.C., William Sidney Smith, and Jan Mohrfeld Kramer represented Plaintiffs. (Doc. 1, ¶ 10).

Then, roughly seven years later, when Plaintiffs decided to lease the facilities to Trillium Holdings, LLC ("Trillium"), Defendants drafted the lease agreements. (*Id.*, ¶¶ 13–14). The lease agreements drafted in 2011 failed to address the Consent Decree. (*Id.*, ¶¶ 16, 19).

By 2018, Trillium found itself under investigation by the EPA for violating the Consent Decree. (*Id.*, ¶ 17). Trillium, claiming it had no notice of the Consent Decree and did not agree to assume its obligations, notified Plaintiffs of a potential claim for indemnification. (*Id.*, ¶¶ 17–19). Plaintiffs claim that Defendants' failure to advise them properly about whether to provide notice of the lease to the EPA and DOJ, or to address the Consent Decree in the lease agreement, constitutes malpractice. (*See id.*, ¶¶ 16, 27–38; Doc. 24 at 5–6).

Recently the parties advised the Court of various discovery disputes. (Doc. 47). One dispute concerns a subpoena *duces tecum* served on the law firm Keating, Muething & Klekamp, PLL ("KMK") in December 2021. (*Id.* at 7–8). Plaintiffs are former clients of KMK, which they retained to assist them in compliance with the Consent Decree from 2004 to 2011. (Doc. 61 at 5). KMK initially represented that responsive, non-privileged documents would be produced to Defendants. (Doc. 47 at 7–8). But a subsequent letter from Plaintiffs, describing their position that the materials requested by the subpoena were irrelevant or privileged, brought production to a standstill. (*Id.*). The Court granted Defendants leave to file a motion to compel the production

2

(Doc. 50), which they did (Doc. 52). KMK filed a response to clarify the procedural history surrounding the subpoena, and Defendants replied. (Docs. 54, 56).

Particularly, KMK advised that it received the subpoena in mid-December 2021, and when it served its responses and objections to the subpoena upon counsel on January 4, 2022, began collecting responsive documents and information. (Doc. 54 at 1). On January 6, Plaintiffs' counsel notified KMK and Defendants that he would undertake a privilege review of the discovery before it could be produced to Defendants. (*Id.* at 1–2). By January 18, KMK notified Plaintiffs' counsel that the responsive documents, comprising approximately 100 file folders of paper documents and 2 GB of electronic information, were ready for his inspection at KMK's office. (*Id.* at 2).

Thereafter, on January 28, "[t]o move matters along," KMK sent the electronic information to Plaintiffs' counsel directly. (*Id.*). Plaintiffs' counsel came once to KMK's office to inspect the paper files, on February 22, but he did not complete his review. (*Id.*). In the intervening months, though the parties engaged in some conferral efforts regarding the subpoena, Plaintiffs did not produce any of the documents collected by KMK, nor did they prepare a privilege log asserting their basis for withholding the documents. (Doc. 56 at 2–3; Doc. 61 at 2).

Plaintiffs failed to file a timely opposition to the present Motion. Yet, when they later requested leave of Court to do so (Doc. 57), that request was granted in the interest of having a fully developed record on the merits of the Motion (Doc. 60). Plaintiffs then filed their opposition (Doc. 61), and Defendants filed an additional reply (Doc. 63). The matter is now fully briefed and ripe for consideration.

## II. DISCUSSION

Defendants move the Court to compel the production of the responsive materials collected by KMK. (Doc. 52 at 1–2). And KMK, for its part, "remains ready" to produce those documents

3

upon agreement by the parties or the Court's order. (Doc. 54 at 2). It has withheld the documents consistent with Plaintiffs' counsel's representation that he would need to conduct a privilege review before anything was produced. (*Id.* at 2). And given that "[t]he attorney-client privilege is the client's to assert and here the client has not waived it[,]" it waits for either permission from Plaintiffs or compulsion from the Court. (*Id.* at 3). Defendants say compelling the production is appropriate given that: the materials sought in the subpoena are relevant to the claims and defenses of this case (Doc. 52 at 10–14); none of the requested material is privileged, due in part to Ohio's self-protection exception to privilege (*id.* at 14–20); and the subpoena is not unduly burdensome given the needs of the case (*id.* at 20–21).

Plaintiffs say the subpoena seeks irrelevant information and is not proportional to the needs of the case. (Doc. 61 at 4–8). Still more, they say the information sought is privileged (*id.* at 8–14) and Defendants should be sanctioned for failing to comply with Rule 45(d)(1) (*id.* at 14–17). Finally, they ask that if the subpoena is enforced, it be narrowed to only the production of records relating to the 2011 lease negotiations. (*Id.* at 17–18).

A. *Relevance and Proportionality*

Rule 26(b) of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Rule 45, for its part, provides that when a subpoena has been objected to, "the serving party may move the court for the district where compliance is required for an order compelling production or inspection." Fed. R. Civ. P. 45(d)(2)(B)(i). "The proponent of a motion to compel discovery bears the initial burden of proving that the information sought is relevant." *Gruenbaum v. Werner Enters., Inc.*, 270 F.R.D. 298, 302 (S.D. Ohio 2010) (citation omitted). "While relevancy is broad, 'district courts have discretion to

4

limit the scope of discovery [when] the information sought is overly broad or would prove unduly burdensome to produce.'" *Plain Local Sch. Dist. Bd. of Educ. v. DeWine*, 335 F.R.D. 115, 119 (N.D. Ohio 2020) (alteration in original) (quoting *Surles ex rel. Johnson v. Greyhound, Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007)). At base, "the scope of discovery is within the sound discretion of the trial court." *Stumph v. Spring View Physician Practices, LLC*, No. 3:19-CV-00053-LLK, 2020 WL 68587, at *2 (W.D. Ky. Jan. 7, 2020) (quotation marks and citations omitted).

First, the information sought by the subpoena is relevant. The subpoena requests information about KMK's representation of Plaintiffs for compliance with the Consent Decree. (*See generally* Doc. 52-4). As Defendants identify, compliance with the Consent Decree is significant to numerous issues in this case, including scope of representation, breach of the standard of care, comparative negligence, proximate cause, and the statue of limitations. (Doc. 63 at 2–6). To take one notable example, the Consent Decree not only required explicit notice of the Consent Decree in any lease agreements executed by Plaintiffs, but also required them to: (1) file a memorandum of agreement setting forth such notice with the local property recorder's office; (2) give notice to the EPA, U.S. Attorney, and DOJ thirty days prior to any change in operational or ownership control; and (3) provide a copy of the Consent Decree to the proposed transferee fifteen days prior to such transfer. (Doc. 9-5, ¶¶ 7–8).

Thus, if at any time Plaintiffs told KMK they were entering a lease agreement, it is likely KMK would have informed them of these several obligations, including the obligation to include notice of the Consent Decree in the lease instrument, as they all related to Plaintiffs' overall compliance. Because Plaintiffs now claim the lease instrument was insufficient due to Defendants' malpractice, any information about their own knowledge of that particular obligation, or the related obligations surrounding transfer, would make their comparative negligence more or less likely. It

would also shed light on when a reasonable person would have perceived "mistakes in lawyering" in the drafting of the lease instrument, which is central to determining when the malpractice statute of limitations began to toll. (Doc. 24 at 7) (quoting *Omlin v. Kaufman & Cumberland Co., L.P.A.*, 8 F. App'x 477, 479 (6th Cir. 2001)).

Plaintiffs' arguments against relevancy are a series of admittances and responses to interrogatories they have previously made in discovery:

> Plaintiffs have admitted that they were represented by KMK with regard to ongoing environmental compliance with the Consent Decree. Plaintiffs have admitted that Ohio Fresh Eggs was aware of the existence of the Consent Decree and signed the February 18, 2004 Third-Party Beneficiary Agreement, and agreed to its terms. Plaintiffs have admitted that they were required to comply with the Consent Decree, as well as impose such obligations upon any subsequent transferee of the property when it was signed.

(Doc. 61 at 4) (citing Doc. 52-1). But a general admittance that Plaintiffs were aware they had to impose the obligations of the Consent Decree upon any subsequent transferee, for example, is not equivalent to Defendants learning whether, or how extensively, Plaintiffs discussed the Consent Decree's particular notice requirements with their compliance counsel. As described above, that kind of information would make questions involving comparative negligence and statute of limitations more or less certain.

And those issues are far from agreed between the parties. (*See, e.g.,* Doc. 24 at 6–9) (describing the statue of limitations dispute between the parties and noting that the allegations of timely suit were sufficient at the motion to dismiss stage, but that "Defendants' argument is better suited for a motion for summary judgment[,]" once facts have been further developed). Additionally, the parties are far from agreement on what precisely these admittances mean. (*Compare* Doc. 61 at 6 (Plaintiffs maintaining that they "have not alleged that Defendants' representation included Consent Decree environmental compliance . . .") *with* Doc. 63 at 2–3 (Defendants quoting Plaintiffs' response to request for admittance, which stated "Defendants

6

provided legal representation regarding the purchase of the egg production facilities, and the lease to Trillium, which included compliance with the Consent Decree . . .")).

In assessing the proportionality of the requests to the needs of the case, the Court considers "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).  Significant here, the requested discovery can meaningfully clarify several important issues in the case, including at least one potentially dispositive issue—the statute of limitations.  Further, requesting the information directly from KMK is the likeliest route to information about Plaintiffs' knowledge, which would otherwise be inaccessible to Defendants.  While the subpoena also imposes a significant burden, asking KMK to collect documents related to seven years of representation, that burden is outweighed by the discovery's likely benefit.  And notably, the burden posed to non-party KMK has already been suffered—with the documents ready to produce.  The only burden remaining is for Plaintiffs to complete a privilege review, which is a reasonable burden for them to assume.

Plaintiffs argue the subpoena is not proportional because other sources of discovery offer similarly relevant information.  The Court disagrees.  For example, Plaintiffs say the public records produced by the EPA purportedly establish that the lessee, Trillium, "was well aware of the Consent Decree and the need for compliance, as it started filing the quarterly reports required by the Consent Decree soon after it leased the farm in 2011." (Doc. 61 at 5) (citing Doc. 61-3 (containing November 2012, July 2012, and April 2012 compliance reports submitted on behalf of Trillium, as well as January 2012, October 2011, July 2011, and April 2011 reports submitted on behalf of Plaintiffs)).  Plaintiffs say the fact that Trillium quickly took over compliance

7

reporting settles the statute of limitations question, demonstrating that they "had no reason to previously question or suspect Defendants had committed malpractice and failed to properly advise them regarding the 2011 Lease Agreements . . . ." (Doc. 61 at 6). But Defendants maintain the same records only raise further questions about why Plaintiffs continued to submit compliance reports "into 2012, well after the 2011 Leases were executed." (Doc. 63 at 7). Simply put, the other discovery Plaintiffs identify provides far from a settled picture of the relevant issues.

Similarly, Plaintiffs' arguments that if Defendants want to learn what Plaintiffs knew and when, they can simply depose them (Doc. 61 at 7), are unavailing. Defendants are entitled to more complete discovery than that. Indeed, any deposition regarding Plaintiffs' knowledge will be more informed and effective if Defendants have supporting discovery.

Finally, Plaintiffs represent that when Trillium issued a notice of default to Plaintiffs on or about July 10, 2018, they "retained KMK to assist in the investigation, and negotiations with the US EPA with regard to any potential Consent Decree violations by Plaintiffs, and/or Trillium, and the possibility of significant administrative, civil or criminal penalties should such violation be found." (*Id.* at 7–8). That representation ended sometime in 2019. (*Id.* at 8 n.5). Because the subpoena requests communications related to KMK's representation of Plaintiffs for compliance with the Consent Decree from 2004 to present, it would ostensibly capture communications related to the 2018 EPA investigation, which is ongoing. (*Id.* at 8).

The Court disagrees with Plaintiffs' contention that these records have "absolutely no relevance to whether or not Defendants committed malpractice in 2011." (*Id.*). Rather, these records are similarly relevant as the other material sought by the subpoena. Yet, the Court does find that the question of proportionality for these records is distinct. Because they implicate Plaintiffs', Trillium's, and the EPA's various interests in an ongoing investigation, there is

8

additional burden associated with the production. Further, because the other requested material in the subpoena related to the 2004–2011 representation may provide significant relevant information, Defendants' need for the more burdensome information may ultimately prove less.

Accordingly, the Motion to Compel is **GRANTED in part and DENIED in part**. The subpoena is modified so as not to require the production of communications involving the 2018 investigation by the EPA. The Court may revisit this holding at a later date, on motion by Defendants, and as the relative need and burden surrounding the production develops.

B. *Attorney-Client Privilege*

Plaintiffs further argue that the subpoenaed information should be protected from disclosure because it is privileged attorney-client communication. (Doc. 61 at 8–14). Defendants say that the attorney-client communications are not privileged, because they constitute "other-attorney communications" under Ohio's self-protection exception to the attorney-client privilege. (Doc. 52 at 15–19). Plaintiffs disagree, largely restating their arguments against relevance and proportionality. (*See* Doc. 61 at 8–14). Finally, Defendants ask the Court to find that Plaintiffs have waived any privilege objections. (Doc. 63 at 9–10).

Here, Ohio law governs claims of attorney-client privilege. *Scotts Co. LLC v. Liberty Mut. Ins. Co.*, No. CIV A 206-CV-899, 2007 WL 1500899, at *3 (S.D. Ohio May 18, 2007) (citing *In re Powerhouse Licensing, LLC*, 441 F.3d 467, 472 (6th Cir. 2006)). In addition to situations in which a client consents to disclosure or waives privilege, "[u]nder Ohio common law, lawyers can also disclose communications if a common law exception to the privilege applies." *Waite, Schneider, Bayless & Chesley Co., L.P.A. v. Davis*, No. 1:11CV00851, 2013 WL 4757486 at *4 (S.D. Ohio July 12, 2013) (citing *Squire, Sanders & Dempsey, L.L.P. v. Givaudan Flavors Corp.*, 127 Ohio St.3d 161, 2010-Ohio-4469, 937 N.E.2d 533, at ¶ 24). One such exception is the self-

9

protection exception, which permits an attorney who becomes involved in a legal controversy with a current or former client to "reveal any confidences necessary to defend himself or herself or to vindicate his or her rights with regard to the disputed issues." *Squire* at ¶ 34.

At times, this exception extends beyond those communications the defending attorney had with the client, to include "other-attorney communications" the client had with third-party counsel. *Waite*, 2013 WL 4757486, at *6.  Plaintiffs and Defendants agree (Doc. 61 at 11–14; Doc. 63 at 8–9) that the pertinent test to compel other-attorney communications is that outlined in *Waite*: (1) to decide "whether the content and timing of the other-attorney communications are relevant to determining liability[;]" and (2) to "weigh the benefit of protecting the privilege against the difficulty of discovering the facts relevant to liability by other means." 2013 WL 4757486, at *8 (internal quotation marks omitted).

The Court reiterates that Defendants have convincingly demonstrated that the content and timing of Plaintiffs' communications with KMK are relevant to determining liability.  Particularly, communications relating to KMK's representation of Plaintiffs between 2004 and 2011 will establish a history of compliance (or non-compliance) with the Consent Decree and support Plaintiffs' knowledge of their obligations under the Consent Decree, during the period from which Plaintiffs acquired the property to when they decided to transfer it, which in turn will aid in determining questions involving statute of limitations, breach of duty, causation, damages, and comparative negligence. (*See* Doc. 52 at 10–14).  Additionally, the Court finds that the difficulty in discovering these facts by other means, as outlined above in the discussion of Plaintiffs' admittances and the public record disclosures from the EPA, outweighs the benefit of protecting the privilege.  Attorney-client privilege should therefore not attach to any of the KMK materials that are relevant to determining liability.  Simply put, Plaintiffs have put compliance with the

Consent Decree front and center. To allow them to withhold pertinent information about compliance would prejudice Defendants in their ability to defend themselves against Plaintiffs' claim.

Defendants further ask that the Court find Plaintiffs waived privilege, as they have failed to conduct a privilege review and assert specific bases for withholding documents since the materials were first made available to them in January. (Doc. 63 at 9–10). While the Court agrees that Plaintiffs have been dilatory in complying with their obligations to review the material and produce a privilege log, it is too soon to consider a consequence as serious as waiver. But the time for Plaintiffs to conduct a privilege review is now. Accordingly, Plaintiffs are **ORDERED** to review the documents collected by KMK and produce any non-privileged documents, as well as a privilege log for any withheld documents, to Defendants within **thirty (30) days** of the date of this Opinion and Order. Plaintiffs should bear in mind the foregoing explanation of when the privilege will not attach and the requirement that "[t]he privilege log must be detailed enough to prove that the communications in question were in fact confidential communications relating to legal advice." *Cooey v. Strickland*, 269 F.R.D. 643, 649 (S.D. Ohio 2010). The parties are further expected to engage in a meaningful conferral process if any disputes arise with the production and privilege log. If any privilege disputes persist, the Court will undertake *in camera* review.

C. Rule 45 Sanctions

Plaintiffs ask that, if the Court grants the motion to compel, it also assesses costs related to the subpoena against Defendants pursuant to Federal Rule 45(d)(1). They say this will ensure that KMK is compensated for the time spent collecting the responsive material, as well as for future "additional time incurred in reviewing each document, determining attorney-client privileged

communications, attorney work product, and any other objectionable records . . . ." (Doc. 61 at 16). The Court notes several difficulties with this request.

First, KMK has made no representation on its own behalf that it seeks compensation for compliance with the subpoena. (*See* Doc. 54). Absent that, the propriety of Plaintiffs making the request for KMK, and their standing to do so—for which they cite no support—is dubious. Second, in asking that KMK be compensated for future time spent reviewing each document, Plaintiffs appear to be under a misapprehension about future obligations in completing this production. The attorney-client privilege is Plaintiffs' to assert and, if need be, prove. *See Cooey*, 269 F.R.D. at 648. KMK will not be responsible for the privilege review of the at-issue documents, Plaintiffs will.

Regardless, the standard for sanctions is not met. Rule 45(d)(1) requires parties who issue subpoenas to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). The Rule requires courts to "enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply." *Id*. What constitutes an "undue burden" is assessed on a case-by-case basis. *In re: Mod. Plastics Corp.*, 890 F.3d 244, 250–51 (6th Cir. 2018). Indeed, not every instance of overbreadth is a ground for sanctions, as "such overbreadth may sometimes result from normal advocacy." *Legal Voice v. Stormans Inc.*, 738 F.3d 1178, 1185 (9th Cir. 2013).

At base, Rule 45 provides that a party who issues a subpoena must take "reasonable steps" to avoid imposing such a burden. Thus, when an issuing party engages in good faith negotiations to resolve conflicts over subpoenas and to avoid imposing undue burden, courts have declined to impose Rule 45 sanctions in the absence of other aggravating factors. *See e.g.*, *Tiberi v. CIGNA*

*Ins. Co.*, 40 F.3d 110, 112 (5th Cir. 1994) (stating that Rule 45 provides for sanctions against "one issuing a vexatiously overbroad subpoena" but reversing sanctions awarded where a party engaged in "sufficient good faith efforts to negotiate reasonable parameters on the subpoena"). Here, Defendants engaged in good faith efforts to negotiate conflicts over the subpoena, and nothing in the record suggests other aggravating factors. Notably, Defendants did not dispute KMK's requested extension for the deadline to collect responsive documents. (*See* Docs. 52-5, 52-6). The other conflicts surrounding the subpoena were between Plaintiffs and Defendants, and did not involve KMK directly. The record demonstrates that Defendants meaningfully conferred on those conflicts, though the parties were ultimately unable to reach a resolution. (*See* Docs. 52-5, 52-6, 52-8, 52-9, 52-10).

Plaintiffs' request for Rule 45 sanctions against Defendants is **DENIED**.

D. *Additional Modification of the Subpoena*

Plaintiffs also ask the Court to narrow the subpoena. Particularly, they request that the subpoena be limited to: "The identification and production of any and all records relating to, documenting, or involving KMK's representation of Plaintiffs with regard to the 2011 lease negotiations with Trillium, including but not limited to any such representation regarding whether or not reference to the Consent Decree should be included in the master agreement lease with Trillium." (Doc. 61 at 17). Essentially, this is a motion for the Court to modify the subpoena under Rule 45.

Rule 45 provides that the court must, upon motion, quash or modify a subpoena if it fails to allow a reasonable time to comply, requires a nonparty to travel more than 100 miles, requires disclosure of privileged or protected material, or subjects a person to undue burden. Fed. R. Civ. P. 45(d)(3)(A). The subpoena, as already modified by the Court above, does not subject KMK to

an undue burden, or otherwise violate Rule 45. Further still, Plaintiffs' suggested narrowing is unreasonably limited. So Plaintiffs' request that the subpoena be further narrowed is **DENIED**.

   E. *Other Discovery Matters*

Finally, the Court notes that the parties identified several other discovery issues in a recent status report. (Doc. 65). For only one of the disputes do the parties request action by the Court. Specifically, the parties note a disagreement about the production of communications between Plaintiffs, their counsel, Trillium, and the EPA related to the EPA investigation from 2018 to present. (*Id.* at 3). Plaintiffs assert that those communications are highly confidential and might only become discoverable once the EPA's investigation has concluded. (*Id.*). Defendants say the communications are essential for establishing damages in this case. (*Id.*). But because no penalties have yet been assessed by the EPA, Plaintiffs say the communications currently have little relevancy to damages. (*Id.*). Plaintiffs request leave to file a motion for protective order, while Defendants indicate a willingness to file a counter motion to compel the discovery. (*Id.*).

The requests are **DENIED without prejudice**. The Court holds in abeyance any ruling on motions to compel or protect this information. At present, too many factors are likely to change the calculus of the appropriateness of the production, including whether the EPA investigation concludes, whether any penalty is assessed as a result of that investigation, and whether the issues of liability in this case are resolved before a calculation of damages becomes necessary.

**III.   CONCLUSION**

Defendants' Motion to Compel (Doc. 52) is **GRANTED in part and DENIED in part**. The subpoena is modified so as not to require the production of communications involving the 2018 investigation by the EPA. Plaintiffs are **ORDERED** to review the documents collected by KMK and produce any non-privileged documents, as well as a privilege log for any withheld

documents, to Defendants within **thirty (30) days** of the date of this Opinion and Order. Plaintiffs' requests for sanctions and additional modification of the subpoena are **DENIED**. The parties' requests for leave to file motions related to an additional discovery dispute (Doc. 65) are **DENIED without prejudice**.

    IT IS SO ORDERED.

Date: September 2, 2022                                             /s/ Kimberly A. Jolson
                                                                            KIMBERLY A. JOLSON
                                                                            UNITED STATES MAGISTRATE JUDGE